We'll hear argument next in Case 17-1307, Obduskey v. McCarthy & Holthus. Mr. Geiser? Thank you, Mr. Chief Justice, and may it please the Court. Nonjudicial foreclosures are covered under the Fair Debt Collection Practices Act as a direct or indirect attempt to collect a consumer's debt. It is a direct attempt because the pre-foreclosure notices are indistinguishable from traditional dunning letters. It is an indirect attempt because the foreclosure process is designed by law to automatically sell the consumer's house to obtain payment on the consumer's debt. These conclusions follow directly from the Act's plain text, structure, purpose, and history. Respondent can only resist these conclusions by rewriting the statutory text, creating a huge loophole in the Act's scope, and eliminating the safeguards that Congress designed to protect consumers from debt collector mistakes and abuse, which occur all too often in the foreclosure context. We think that the easiest way to resolve this case is to focus directly on the pre-foreclosure notices. Those notices are quintessential FDCPA communications. They just so happen to arise in the foreclosure context. They state that there is a default on the debt. They state the amount of the debt owed. They state to whom the debt is owed. And critically, they state the consequence of failing to satisfy that debt. That message is unequivocal to any consumer who receives it. Alito, I think you have a pretty good argument if we look just at 15 U.S.C. 1692a6, which talks about regularly collects or attempts to collect directly or indirectly debts owed or due or asserted to be owed due to another. At least you've got a reasonable argument under that provision. But the two provisions that seem to me to create a lot of problems for your position are 15 U.S.C. 1692a6, which creates a special definition of debt collector for a purpose that's not relevant here, and that refers to any business, the principal purpose of which is the enforcement of security interests. So if a business whose principal purpose is the enforcement of security interests fell within the prior definition, the all-purpose definition, there wouldn't be a reason for that provision. So I think you've got a tough time explaining that away. And your answer is that refers to repo activities. But then there's another provision that talks about what looks like repo activities in a lot more specific language, 1692f6, which talks about dispossession and disablement. So what's your answer to that? Well, Your Honor, I think these provisions actually reinforce our reading of the Act. What Congress did is it started with the main definition for debt collector, and then it proceeded and it expanded that definition. If you look at the language, it says this term also includes. Those are words of expansion. They're collecting people who otherwise don't fall within the main definition. So when we talk about traditional repo activity, we're talking about the type of person who is enforcing a security interest without directly or indirectly collecting a debt. But it's only expanding it for purposes of 1692f6. Exactly, Your Honor. But our point is that the That means that it's something less than that other than 1692f6. At least that's the most natural or a natural way to read it. We fully agree. Our point is that for someone who is enforcing a security interest but not also directly or indirectly collecting a debt, those people are only subject to that one subsection. And it's very clear what Congress had in mind precisely because of 1692f6. It talks about dispossessing or disabling property. That's talking about taking possession of property. It's not talking about demanding payment. It doesn't talk about selling assets to liquidate someone's debt. It's specifically focused on exactly the kind of activity that Congress would have had in mind for repo agents. Yeah, but somebody who's engaging in a nonjudicial foreclosure is enforcing a security interest. And if they didn't so they appear to fall within that provision. And if Congress didn't want them to fall within that provision and only wanted to capture the repo guys, why wouldn't it use the more specific language that it used elsewhere when it was referring to the repo guys? I think if Congress wanted to exclude someone who's both enforcing a security interest and collecting a debt, it would have used one of the exclusions that follow the definition in 1692a6. There are six express exclusions. And if you look to the second sentence of a6, it shows exactly how Congress would have modeled that kind of exclusion. It would have said at the end, instead of ending at F, it would have ended at G. It would have said this term does not include anyone enforcing a security interest. And then it would have said, notwithstanding that exclusion, it does apply for purposes of this one subsection. That's exactly what Congress did in the middle sentence, the sandwich between the main definition and the additional one, when it wanted to exclude that type of activity. And to be absolutely clear, if you look to the context of the statute, it reinforces our reading. Congress included in 1692i a venue provision. This venue provision talks about actions to enforce an interest in real property securing a consumer's debt. That's a foreclosure action. That's the only way to read that language. And Congress described it as a legal action on a debt against a consumer. That provision only applies to someone who fits within the definition of a debt collector under the main definition. So it doesn't make any sense to read that section. It doesn't make any sense to read that section as limited to security enforcers when it only applies to people who might enforce security interests, but they're also collecting debts. But again, we think if you look just to the initial, the first part of the section, it talks about the main definition of a debt collector. And if you read the security enforcement provision to exclude people who otherwise qualify directly within that main definition, you're setting up these two sentences to conflict with each other. Mr. Geiser, I may be missing something here, so I'd appreciate your help. As I understand it, you think that first sentence in A-6 is the main one and captures most debt collectors, but for some reason it doesn't capture the repo man who in the dead of night goes and just grabs my car. And for that, we need the last sentence, right? That's right. All right, I'm following you so far. Great. But then when I go over to F-6, which further illuminates that last sentence and talks about who's covered, it talks about the fellow who takes, the dead of night repo man you're talking about, or threatens to take a security interest. So there's that fellow. He's not just taking the stuff in the middle of the night. He's threatening to do it. He's talking to me. And I would have thought that fellow would have been captured by you reading the first sentence of A-6. So that's rather convoluted and roundabout. But help me out. Why doesn't that disprove your thesis? Well, I don't think it disproves it for a few reasons. One is that 1692 F-6 also applies to people who are debt collectors under the main definition. So it's possible that when you're looking at somebody who enforces a security interest without collecting a debt, that those are the people who typically are not communicating with the debtor. And there's certainly a large portion of repo activity are people who are changing locks on doors, who want nothing to do with the debtor at all. They hope to never see them. The entire point is to show up in the dead of night, take their car, and return it to the creditor. Now, I think what's critical about F-6, again, it does not talk about demanding payment. It doesn't talk about liquidating assets. And so if you think of the type of activity it's covering, it's not covering people who fall within the main definition. Many elegant words there. But what do we do about the word threatening? That was my question. Well, again, two ways to handle it. One is that they may not be threatening to collect a debt. They may not be demanding payment. They may not be liquidating the asset. The other is they threaten to take a nonjudicial action with respect to a security interest. That's what the statute says. So help me out with that language. That's why I need your – I know you've got something for me here. Sure. Well, it could be that they threaten to take the car when, in fact, they don't intend to take it at that time. Because they want to get paid. They want to tow the car back to the creditor, and they're hoping to keep it there so they can take it in time. But, again, I think the most common application of the security enforcer definition will typically involve people who aren't communicating with the debtor. And remember, F-6 also applies to someone who qualifies under the main definition. It applies to both security enforcers and to people who are full-fledged debt collectors. And so Congress – That's the point. That's the point, I think. I mean, let's call it Part 1 and Part 2. Part 1 says debt collectors can't – are so-and-so. And then here are all the things they can't do. And that's a lot of them. And then we have Part 2. And Part 2 says the mortgage people are debt collectors for purposes of F-6. And F-6 doesn't have all of them. It just has a few pretty bad ones. And so why would Congress have put in F-6 if it wanted all of them to apply? Well, again, Your Honor, it put in F-6 to reach the group of people who are not also full-fledged debt collectors, who are not also obtaining payments in part F. Well, it doesn't say that. It says a debt collector may not – they put in Part 2, which I'm calling Part 2, to be sure that these people who are not full-fledged debt collectors have to do at least F-6. Okay? Absolutely. But then I – Right. And if we have a person who fits within the definition of Part 2, that would seem to argue against his fitting into the definition of Part 1. Well, absolutely not, Your Honor, because you can have someone who does both. Take a repo man who shows up, but instead of doing what they actually do, which is they wait for the consumer to leave and then they take their car, they actually go to the consumer and they say, you know what, I'm going to give you three hours to pay the debt. And why isn't a repo man like that in Part 1? He is. And so that's exactly our point. All right. Then who is in Part 2 but not in Part 1? The people in Part 2 are the – it's sort of like a Venn diagram. There are some people who collect debts without enforcing a security interest. There are some people who enforce security interests without collecting debts. Isn't the repo man doing that? Exactly. That's our point. And then there's the middle category, like the foreclosure agents who are doing both, because they're sending notices that are absolutely indistinguishable from classic debt collection activity. They're demanding payment on the debt. And if you don't pay – and by the way, in Colorado in 2017, about 11 percent of people did in fact pay in response to these notices. Okay. But now it's my other question, of course, is what do you want to say in respect to the fact that Colorado has a pretty good, in many respects, stricter law than there is here and that protects the consumers more? And yet, I guess if we accept what you say, we'd have to say that that Colorado law is illegal. Absolutely not, Your Honor. No, because? I mean, the reason I thought it would be illegal is because it says you can't communicate with a third person. You couldn't tell the trustee about he's supposed to send a letter. You couldn't put it in anything in the newspaper. I mean, that would seem to me contradictory, and I guess the Colorado law would fall there. Your Honor, out of all the eight amicus briefs and incredibly able counsel for Respondent and the government, they could cobble together at best three or maybe four possible conflicts. And when you actually dig into the weeds of those conflicts, they're not conflicts at all. They're very easy to accommodate. And if you want to walk through them, if you look at the notice on 1692G, that says that if the — You don't have to walk through them if you don't want to. Just tell me where they are in your brief. Sure. Well, they're addressed at the end of our brief. They're also addressed in the amicus brief. But I think the — I'll make a couple of critical points, though, because I think one, that is the easiest way to resolve those conflicts. You can first obtain advanced consent from the consumer to provide all necessary consents in the event of a foreclosure. And if the consumer decides not to follow through, the creditor can send the notice. The FTC pay does not apply to creditors. We know this from Henson. It only applies to professional debt collectors. And there is absolutely nothing in the Colorado scheme that says that a foreclosure has to be run by a professional debt collector. The consumer can — the creditor can take the notice, publish it themselves, and there's absolutely no problem. Mr. Geiser, I find this a difficult question. Going back to something that Justice Alito said, the reason I find it a difficult question is it seems to me that judicial foreclosures — nonjudicial foreclosures fall within both. They — you know, these people are debt collectors under the language of the statute, and these people are enforcing security interests under the language of the statute. But that can't be right, because the grammar of the statute suggests that we now have to kick them out of one or the other, all right? And so the question is, which do we kick them out of? Do we say, notwithstanding that they look like debt collectors, we're not going to treat them like debt collectors? Or do we say that, notwithstanding that they enforce security interests, we're going to pretend that they don't? So when I think about it that way, I kind of think, well, I don't know, foreclosures are paradigmatic enforcement of security interests. There's nothing that gets more enforcing a security interest than foreclosing on a mortgage. So kicking them out of that one seems a little bit more odd than kicking them out of a very broad definition of debt collectors. Well, a few points, Your Honor. First is, I don't think you have to kick them out of the additional definition if they fall under the main definition. If Congress had said, if Braden did, as an exclusion, instead of an addition, they're trying to capture more people, then I think that that point would have more force, even if Congress had said, for purpose of subsection 6092F6 only, but they didn't say that. And again, this is a – this is a definitional section that's capturing people. You start at the beginning, you're seeing, is this person covered? If they don't fall within any clause, they're not covered. And so if you fall within the first clause, you're covered. If you happen to also do something that qualifies you under a different sentence that is not framed in exclusionary terms, then that's fine, but you still qualify under the main definition. And again, when Congress wanted to exclude people, they did it expressly. And we know exactly how they did it, because it follows the additional definition. Alito, your point there, though, depends, right, on reading that language as referring to the repo guy, right? We have to – we fully concede that we need to identify someone. But then when you turn to F6, is that really just limited to the repo situation? Well, not necessarily, Your Honor. It could also be someone who goes and changes locks on an apartment to evict someone. The point being the language of F6 seems a lot broader than just the repo situation. So then when you go back to A, it seems odd to think that that's just limited to the repo situation, if I understand the interaction of the two provisions correctly. Well, again, the additional definition will cover people who aren't just repossessing cars. It can also include someone who is separately collecting debts. Because, again, you can fit under both sentences. There's nothing about the statute that says if you fall within an additional category that you're excluded from the main category. And Congress, again, they know how to write a statute that does that. This is statutory overlap. We see it all the time in the U.S. Congress. But let me ask you this about the repo situation. Suppose the repo guy is out there getting into a car, and the owner of the car sees him out the window and runs out with a gun and says, what are you doing? And the repo guy says, well, you didn't pay, you're in default on your payments, so I'm taking your car. Is he a debt collector because he's now told the car owner that, about the debt? In that scenario, I don't think so, because he's not leveraging the security interest. It would be different if he said, if you want to pay now, I'll get out of the car and go away. But if he says, look, you've run out of chances, you didn't pay your bill, I'm towing the car, take it up with the creditor. And to be very clear what happens at that point, the repo man brings the car back to the creditor. At that point, the debtor still owes 100 percent of the same debt they owed before the repossession. It's the creditor, then, who takes the car, sends the notice under the UCC and says, if you want your car back, pay us the money, or we'll auction off the car and pay down your debt. Alitoson So what is the difference between that situation and the nonjudicial foreclosure situation, where the homeowner is simply notified that the house, that the mortgage is being foreclosed? I think there's a stark difference, Your Honor. Alitoson What is the difference? Well, the difference is that they're not just saying, we're going to foreclose on your house no matter what you do. They're saying, this is the amount you owe, this is the consequence if you don't pay it by this date. We've been instructed to take away your home. Adding an express statement at the end of that that says, will you please pay now, is absolutely superfluous to any ordinary, normal person who receives that letter. They understand exactly what it's saying, saying pay us money. It would be more like the repo agent who says, I'm going to repossess the car unless you pay the money now. Now, that person would be a debt collector, but someone who just says that we're going to take the car no matter what, that's leagues away because they're not leveraging the security interest. And, again, if you look to the structure of the Act, it's very hard to understand how foreclosure activity does not fall within the main definition when there is a special section, 1692I, that talks directly about foreclosures. I have another question about your repo man example. You say we need that last sentence to capture him in A6, but why wouldn't he be captured by the first sentence in A6 too? Why isn't repo man a classic debt collector under any definition, even the very broad ones you proffer for A6, the first sentence? First, I don't think that's the most natural reading of it, because you're focusing specifically on what each person in the process is doing. When the repo man, again, when he goes and takes the car in the middle of the night and returns it to the creditor, he has to do what? The principal purpose of his business, using interstate commerce to collect a debt, whatever the first sentence says. The principal purpose is to enforce the security interest. When the repo man is done and he delivers the car to the creditor's lot, he has not obtained payment on the debt. And that's even under Respondent's definition. It's you. Why don't you lose, then? Why isn't that just conceding away the case? Absolutely. If the repo man is not collecting a debt, he's just executing a security interest. Why is that really problematic for you, Mr. Kagan? No, no, no, Your Honor. That proves that the additional definition that fits the repo man, the repo man does not fall within the main definition. And again, I'm not talking about foreclosure agents, because foreclosure agents aren't engaged strictly in repo activity. Again, they're sending notices. They're trying to induce payment. I'm just talking about the repo man, just the repo man. First of all, first question, why doesn't he fall within the first sentence of A? And second, if he doesn't, then why isn't he exactly like the foreclosure expert? Well, their conduct is completely different, which is also why they don't fall within the first sentence of A. If all they're doing is enforcing the security interest, they take the property and they bring it back to the creditor. But the result of that is to liquidate the debt. And I thought that your principal argument as to nonjudicial foreclosures was that we should look to the real economic effect of this, which is to liquidate the debt. And just like a nonjudicial foreclosure liquidates a debt, so too does repossession of the collateral do the exact same thing. It eventually might, Justice Kagan, but it doesn't when the repo man's job is over. And this is a really critical point. When the repo man brings a car back to the creditor, they have not yet sold the car. It's then up to the creditor to directly or indirectly seek payment.  Kagan. It seems as though when you get to the repo man, you're indulging in all these sort of hyper-technical distinctions, the same kind that you criticized Mr. Shanmugam for indulging in when it comes to nonjudicial foreclosures. I mean, if you're going to get non-technical about it, you should carry through the non-technical, and then the repo man is in the same position as the nonjudicial foreclosure person. Well, I don't think so, Your Honor. I don't think this is getting very technical. I think it's actually looking at the cues in the text for what Congress had in mind. We know from F-6, 1692 F-6, what Congress had in mind for people enforcing security interests, because that's the only provision that applies to them. And again, it talks about disabling property or dispossessing property, taking possession of it. That describes traditional repo activity to a T. Now, it doesn't describe separate activity of then taking that interest, now that you have it, you have the car back, and then sending out a notice to the debtor and saying, if you don't pay, I'm going to sell the car. F-6 also describes nonjudicial foreclosures. Well, it is enforcing a security interest. That's absolutely true, Your Honor, but it's not. F-6 does describe by its terms nonjudicial foreclosures. As part of what a nonjudicial foreclosure is, but it extends beyond that. Because unlike the repo man, the foreclosure agent is demanding payment. They're sending a notice. They're leveraging the security interest, trying to obtain payment. And they're the ones that are instructing the property to be sold. You're trying to explain why this third sentence is in there, and I understand that, and then drawing the distinction between repo and nonjudicial foreclosures. But correct me if I'm wrong about this. The history of how this came about was there was debate about whether those who enforced security interests would be covered under debt collection, debt collector, or not. There were two polar positions, yes and no, and what Congress ended up with was something in between. Is that correct? Well, it is correct, but I would draw a different end to it. And the something in between, though, is it's hard to just read that in between language as repo and not nonjudicial foreclosure. Well, not at all, Your Honor. I think that's exactly what Congress got in mind. That's the heart of it for me. Well, let me try to convince you then. Because I think what Congress did is the competing bill said either security enforcers weren't included at all, or it said they're included for everything. So repo man also has to, even though they're not communicating with people normally, they have to state the correct amount of the debt and do everything else that the FDCPA requires. Now, the compromise that Congress struck is they recognized some people will enforce security interests without also collecting debts. And so they subjected them to a single subsection that describes that activity. I think it's quite telling that F-6 does not talk about demanding payment. It doesn't talk about selling assets. And that is very different if you look to the type of regulations that apply in the foreclosure setting. And this is really key. When you have someone who is threatening to sell someone's house and they're stating the wrong amount that's owed or they're tacking on unauthorized charges, they make it very difficult for the homeowner to cure the debt and they can make it very difficult to actually pay the amount they're owed. All the other substantive provisions apply to someone who's engaged in the foreclosure setting because they're actually sending letters that are leveraging the security interests to try to collect. And if they fail to collect, they're selling the house to obtain payment on the debt. And the guy with the tow truck is not selling the car. Again, what's the problem? Sotomayor, I've been having a huge problem with this entire case. Not on your position, but I was going to ask this of your adversary. I'm reading the language of the statute. It says for the purposes of Section 1692F, it includes people who are enforcing. And the statement that 1692F starts with is a debt collector, period, may not use the unfair or unconscionable means to collect or attempt to collect any debt. It seems to say that a security person is a debt collector. And it says, without limiting the general applicability of the foregoing, without limiting that people who enforce debts, security interests, the following conduct in addition is a violation of this section. I don't mean to help you, but I'm reading F, and it seems clearly to support your position. It's basically saying these are two additional bad ways that they can violate being a debt collector. It's not limiting it to those two ways. I don't even know what the repro argument was about in your brief. Well, the repro argument in our brief, and, Your Honor, just to be clear. It's adding, it's also including, if there was ever any doubt, it's also including those people. It is, Your Honor. But just to be candid, though, it is also including them only for the one subsection of 1692F. But the one subsection seems to say any of these people can't do unfair practices. Exactly. And so the reason that we brought up the repo example in our brief is to show that there is an entire industry that clearly qualifies under the additional definition without directly or directly collecting debts. But what's really at issue is the unfair practices. These people who enforce security interests cannot collect or attempt to collect any debt unfairly. That's the first sentence. And without limiting that general sentence, these two additional things are considered unfair practices. I think that's correct, Your Honor. And if I could reserve the balance. So tell me the counter. Why are they arguing that other unfair practices are not actionable when that sentence says it is to my mind? What am I missing there? Well, yeah, I don't think you're missing anything. I think the easiest way to read the statute is to start at the beginning and to see that if you qualify under the main definition, there's nothing that excludes you from the Act. And the fact that Congress used clear words of inclusion to capture certain people who don't fit within the main definition, it doesn't justify excluding those people from that first sentence. If I could. Thank you, counsel. Mr. Shanbugam. Thank you, Mr. Chief Justice, and may it please the Court. When a law firm sends a notice to a State official initiating the State's nonjudicial foreclosure process, and when the law firm is seeking only to enforce its client's security interests, it does not engage in debt collection within the meaning of the State's nonjudicial foreclosure process. Sotomayor, if you take a look at the complaint in this case, and after all, this case is before the Court on a motion to dismiss, the sole document that could constitute  to the State official. Now, to be sure, that notice requires disclosure of the amount, the principal amount that is owed on the mortgage, and it also requires disclosure of the identity of the holder of the note. But beyond that, that is not a notice that is even directed at the consumer.   Now, to be sure, there are in the record in this case other documents that were sent to the consumer. But even with regard to those documents, those documents as well either initiate the process or are incidental to the initiation of the process, and critically, they contain no demand for payment. And the very fact of the initiation of a foreclosure process is that it ordinarily represents a decision on the part of the creditor to stop seeking payment and instead to pursue an alternative remedy. Roberts. But in most cases, well, maybe I'm wrong, I'm just assuming in most cases that if you start the foreclosure process and the debtor comes in and says, okay, I see you're serious about this, and, you know, either rearranges the financing or pays the debt, that's the purpose, right? Banks don't want to own houses. They want to be paid. And the reason they go to foreclosure is to get payment of the debt. For the perspective of a creditor, Mr. Chief Justice, it is certainly true, and it also happens to accord with common sense, that the creditor would like to be made whole. There are, of course, two means by which a creditor can be made whole. The first is to obtain payment from the debtor, and the second is the alternative, the last resort, to enforce a security interest. Now, if we were dealing with the first sentence of the definition in isolation, I would certainly be confident making the argument that this is not debt collection in the abstract, because what is taking place here is not an effort to obtain or demand payment from the debtor, consistent with the ordinary meaning of these terms. It is, at most, an effort to initiate a process that could lead to the elimination or reduction of the debt, and not everything that could lead to the elimination of a debt constitutes debt collection.  Kagan. I think it would be a different case if what was going on was that a creditor was using the threat of foreclosure to exact payment. In other words, if a creditor came in and said, if you don't pay your overdue    on Friday, I'm going to initiate nonjudicial foreclosure. And I say that because I want to underscore that we're not looking for some sort of categorical exclusion, a party initiating foreclosure. Kagan. Well, whether you say that or not explicitly, isn't that how everybody understands a foreclosure notice? They're going to foreclose on my house, unless I come up with some money. I think that everyone would certainly understand that that is the consequence of a foreclosure proceeding. I think my submission is a more modest one. And again, of course, we're not considering this issue in the abstract because we have the limited purpose definition. But if we were considering this issue in the abstract, my point would simply be that not everything that might, for instance, increase someone's incentive to pay constitutes debt collection. Well, that's true. But it's inherently communicating a message that you need to repay the debt or you're going to lose the house, as Justice Kagan says. You referred earlier to common sense. Well, common sense tells you this is an effort to have you repay the debt. Well, I don't think that that's true. And let me offer a sort of slightly modified... Why not? Even if the expressed words aren't there, everyone who gets something like that, who has the money and wants to, will understand this is a letter seeking to get you to repay. I think the common sense is that anyone who receives that letter would certainly have the incentive to pay if they could because, of course, no one wants to lose their house. Again, I think my submission is a more modest one. And if you take a look at the case law, there is actually a well-developed body of case law in the lower courts, not surprisingly, on the question of what constitutes debt collection outside the foreclosure context because, as you might imagine, this issue has arisen quite frequently in the four decades since the enactment of the Act. Those cases focus on whether, as an objective matter, there is an intent to induce payment. And those cases have looked, in the main, at two factors. First, whether or not there is a demand for payment. And second, they look at the purpose and the context of the communication, the animating purpose. And here... Exactly. The animating purpose is to tell you you need to pay or you're going to lose your house. The animating purpose is to initiate the nonjudicial foreclosure process. That is why the bank at issue here retained my client... Mr. Orr, really? I mean, it can't be a both-hand? Well, I think that leads me to the point about the limited purpose definition, which you picked up on earlier in your colloquy with Mr. Geiser. And that is that if we know one thing from the history of the Act, it is that Congress thought that the collection of debts and the enforcement of security interests were distinct concepts. And we know that not just because of the language of the limited purpose definition, but because Congress really struggled with the question of whether to bring in entities whose principal purpose was the enforcement of security interests for all purposes, whether to exclude them entirely, or instead to bring them in only for purposes of a single provision. Well, but, Juniper, you do have the word indirectly in the first part. And even if you think, in a technical sense, initiating foreclosure is not collecting  Well, I think that that makes it somewhat harder for me. And again, if we were arguing this case with a statute that just contained the first sentence, I would argue that indirect debt collection refers, as the lower courts have held, to situations in which you engage in preliminary steps that facilitate the ultimate demand for payment, for instance, collecting information about the debtor. But again, what we know from the text and from the history is that Congress, whatever debt collection would mean in a platonic form, Congress thought about debt collection in the way that we think about it and in a way that is consistent, of course, with the traditional understanding at common law. As we explain in our brief, debt collection and enforcement of security interests have, of course, been distinct remedies. The former was an in personam action, the latter an in rem action. There are numerous places in federal law where the two are treated as distinct. And so Congress, when it used the phrase enforcement of security interests, was certainly not writing on a blank slate. It meant to capture that body of law. You are arguing, I think, that even if I disagree with you, we disagree with you on the first sentence, you win because of the third sentence, right? Yes, that is correct. I think all — I think I knew — And on the third sentence, I guess the responsive argument is that's an odd way for Congress to have excluded those who enforce security interests from the broad definition of debt collectors and the repo example you heard. Can you respond to that? Sure. So, first of all, let me talk about the limited purpose definition and then I'll talk about F6, the substantive provision that it incorporates. With regard to the limited purpose definition, I think that this is exactly the way that you would expect Congress to have reached the Goldilocks outcome where parties who enforce a security interest are subject only to one substantive provision. Let me give you an example. Let's say that Congress passed a statute that said that the Supreme Court shall have jurisdiction to review decisions of federal courts of appeals. And for purposes of review in capital cases, the Supreme Court also has jurisdiction to review decisions of the Court of Appeals for the Armed Forces. I think that the natural inference from that would be that if you have a non-capital case from the CAF, this Court would lack jurisdiction. And that's the most natural reading. It's the also includes. You would normally say that it doesn't include, rather the also include is additive. And it's additive to a pretty broad collection as well. You would say even though, again, arguendo, this would be included in the broad language, it doesn't include this. But instead, it says it also includes this, and then for the limited purpose. It's not the way you would have told Congress to write the statute. Or your friend on the other side. It's a very circuitous way of getting to your result. Congress never asked me how to write statutes, Mr. Chief Justice. But I think what I would say in response to that is that the fact that it's additive helps us because it reinforces the sense that Congress thought that the collection of debts was distinct from the enforcement of security interest. But now you're counting on your argument about sentence one again. And I think that these questions are really questions that assume that you're wrong on sentence one. Assume that these are debt collectors under the definition that Congress has gave. And the question is why we should then read an additive provision to exclude people from that general definition. So I think first I would say that I don't think that you could say that debt collection is unambiguously so expansive as to cover this situation. Well, I guess I want to make you assume that. But if you do presume that for purposes of this question, I think what I would say is that Congress still viewed enforcement of security interest as distinct. And what I would say with regard to the fallback definition is that it can't be narrowed to this almost impossibly small category of security interest enforcers to which my friend Mr. Geiser refers. First, I don't think he disputes the proposition that what we were doing in this case was the enforcement of a security interest. In other words, I don't think he takes a narrower view of the meaning of that well-established concept. Instead, his view, as I understand it, is that to take his Venn diagram, there is at least some sliver of security interest enforcers who would not be covered by his expansive definition of debt collector, but who would nevertheless fall within the limited purpose definition. And these are these repo agents who are noncommunicative. It's not even the entire category of repo agents. It's the person who takes the car in the dead of night. I think what I would say in response to that is that that doesn't solve his profound superfluity problem, because I think that under his definition of debt collector, even the uncommunicative repo agent would still qualify. Certainly, when your car is repossessed, that creates every bit as much of an incentive to pay as receiving a notice that there might eventually be a foreclosure sale of your house. And I think what is more, I think it also potentially could lead in much the same way to the creditor being made whole. And so I think one thing about Petitioner's submission here is that Petitioner doesn't offer some alternative definition for debt collection. I think that their position really is that anything that creates an incentive to pay would qualify. And I would respectfully submit that that goes further than the well-established body of case law to which I referred on the subject of what constitutes debt collection. And it would also sweep in a range of innocuous communications, as we explain in our brief. On the third sentence, I think what you're saying, but tell me if I'm wrong, is that even if we disagree with you on the first sentence, a necessary premise of the third sentence is that Congress, notwithstanding the broad language of the first sentence, must have thought that enforcement of security interests should be distinct from debt collection. I think that's right. And let me point to one more textual cue that hopefully will be helpful to the Court in that regard. When the — when Congress is talking about this issue in 1692a6, it's talking about it in terms of the definition of debt collector. And as we explain in our brief, in order to be liable under the provision at issue here, and really most of the provisions in the Act, you have to both be a debt collector and engaged in debt collection. And I think in this definition of debt collector, Congress sets up a contradistinction between, on the one hand, an entity whose principal purpose, and it has to be the principal purpose, is the collection of debts, and an entity whose principal purpose, again, the principal purpose, is the enforcement of security interests. And, again, that's another textual cue that suggests that this is an either-or proposition that Congress thought, again, whatever the meaning of debt collection in the abstract, that these were distinct concepts. After all, if you take a look at the earlier bills, which we quote, I think, at page 25 of our brief, Congress uses that distinction throughout all of these bills. Congress is thinking about bringing in entities whose principal purpose is debt collection or the enforcement of security interests into the full ambit of the Act. Now, let me say just a word about F-6, because I promised I was going to say something about that. That is the substantive provision that is incorporated and that applies to these limited purpose security interest enforcers. I think it's, frankly, a little bit unclear what that provision reaches exactly, and I whether that provision reaches foreclosure proceedings, I think that there's a pretty good argument that it does in a fairly limited way, and no one's arguing that it would apply to the foreclosure proceedings at issue here. But if that provision were somehow, again, read to apply only to the uncommunicative repo agent, which, again, I thought was Mr. Geiser's submission, then you would have expected Congress to have used narrower language in the limited purpose definition as well. But instead, again, Congress referred generically to the enforcement of security interests. And, Justice Sotomayor, in response to the concern that you raised at the end of Mr. Geiser's argument, I think what I would say is, first, that, again, the limited purpose definition refers specifically to F-6, and to the extent that that preparatory language speaks about debt collection, I think that just reflects the reality that F-6 applies not just to entities that are subject to the limited purpose definition, but also, of course, to debt collectors who qualify under the broader definition. I think the other statutory provision that I would just say a word about is the venue provision, because that's the provision that Mr. Geiser cited during his argument. And with regard to that provision, I think we would recognize that that provision establishes a Federal venue for at least certain judicial foreclosure actions. We certainly don't dispute that subsection 1 of that provision applies to judicial foreclosure. But, of course, as we note in our brief, judicial foreclosures are different from nonjudicial foreclosures. This case only presents a question concerning nonjudicial foreclosures. One of the characteristic features of a judicial foreclosure is the ability to seek a deficiency judgment. And where a party seeks a deficiency judgment in the context of a judicial foreclosure proceeding, we would concede that it is essentially demanding payment, and therefore would qualify as a debt collector, just as a party initiating a nonjudicial foreclosure would if they, in fact, accompanied that with a demand for payment. And that just underscores the fact that all we're asking this Court to do is essentially to say that the general test for debt collection would apply in this context such that if there were a demand for payment, there would be debt collection and the provisions of the act would apply. Sotomayor, it's strange to think that Congress intended to cover judicial foreclosures where a judge is supervising the process, but not when it's a nonjudge-supervised process. It's counterintuitive. The more damage, I think, can be done in a nonjudicial foreclosure, because there is no judge there to protect or review what's occurring. I'm not sure. You seem to argue that because Congress knew that nonjudicial foreclosures were set forth in very particular ways, but they also knew judicial foreclosures are. I think, Justice Sotomayor, that what I would say about that is that it wasn't so much that Congress was seeking to cover judicial foreclosures as that it was seeking to cover situations in which you're seeking payment. And a judicial foreclosure, as you will be well aware, is more like a typical lawsuit where a party is effectively bringing an in personam action, as is ordinarily the case, or at least often the case, against the debtor, and in the context of that seeking payment. That's really no different from the other. Sotomayor, that's the problem with nonjudicial foreclosure. There's no way to ignore that you take the property to sell it to pay off a part or the whole of the debt. And I certainly am not here to dispute that reality. I think I would say two things about nonjudicial foreclosures in my short time left. The first is that even nonjudicial foreclosures provide considerable protections to debtors, and I think that's true. So do foreclosure actions. Well, that is correct, but I do think that nonjudicial foreclosures and Colorado's scheme is distinct in some ways, but characteristic in others, do require notice to be provided to debtors. They do often provide at least some judicial mechanism for, for instance, a determination of whether or not a party is in default or review after a sale, and there are certainly opportunities to void sales. Sotomayor, does it help you review after sales if you've lost your home? Well, but there is the ability actually to unwind the sale where there is fraud or misrepresentations or other misconduct. But I think that that brings me to the other point that I wanted to spend at least a couple of minutes on, and that is this issue of conflicts with State law. We point in our brief to a number of very specific conflicts that would arise if Petitioner's interpretation were adopted. And with respect to my friend, Mr. Geiser, while he suggested that you should look at his briefs, if you take a look at the relevant section of his reply brief, pages 20 to 21, he doesn't deny any of the specific conflicts, the conflicts between the notice provisions and the limitations on communications. The fact that Colorado law provides a mechanism for verification, whereas, in fact, the FDCPA provides a quite different mechanism for verification. Instead, his submission is that, you know, there are other ways of dealing with this. A party could consent. A court could issue an order. And as we explain in our brief, those are not sufficient remedies for the situation because consent cannot be provided ex ante to a debt collector and because most of the requirements at issue come from State statutes and not from judicial actions. And so, thank you. We would ask that the judgment be affirmed. Mr. Bond.  In the FDCPA, Congress made a considered compromised judgment to treat security interest enforcers as debt collectors for a single subsection of the Act and not for the remainder, including the provisions at issue here. Petitioner's contrary position would nullify that congressional judgment by extending all of the Act's provisions to all security interest enforcers. And his answer to that is this increasingly narrowed category that seems reverse engineered to pick up only a subset of repossession agents, which he says saves the provision from superfluity. That argument fails for two fundamental reasons. First and foremost, it's not what the statute says, and it's a highly unnatural way to read the text if that's what Congress is trying to do. Congress used a well-understood familiar term, enforcement of security interests, which I think Petitioner concedes in his reply brief and this morning that that text does not naturally track this subset of repossession agents. So if Congress were really trying to do what Petitioner suggests of just tacking on this small sliver of repossession agents, it's a highly unnatural way to go about it. If instead, as we submit, Congress was trying to preserve the existing distinction between enforcing security interests and debt collection and the practical difference between those two, because when you enforce a security interest, you're not asking the debtor to do anything, if Congress was trying to treat those two things separately, you would expect it to write a statute along these lines. Not really. I mean, this is a pretty unnatural way to do that, too. So the language undoubtedly could be clearer, but what's – I think what comes from the text is that Congress referred to enforcement of security interests as a distinct concept. But just so I understand the nature of your argument, I mean, you could be saying, look, foreclosure proceedings don't fall within the general purpose definition. They only fall within the limited purpose definition. Or you could be saying, oh, gosh, we have a funny statute here. They fit within both, and now we have to figure out what to make of that. So which argument are you making? So I think the argument that we're making is that Congress chose to treat these two things separately. No, but you're not answering my question. Take just – if you have the general purpose provision itself, do you only – that's the only thing that the statute says. Would foreclosure proceedings fit or not? I think that's a – it's a very difficult question, because you wouldn't have text that speaks directly to it. And what you would look at with just that definition is the context, including the historical definition – or the historical distinction and the practical difference between them. So the question you would ask is when Congress used the phrase debt collection or collection of any debt, did it mean to preserve that distinction or sweep it aside and bring in all of Article 9 of the UCC and State foreclosure law? Roberts. It didn't use that language, though, and it seems significant language on the first step of Justice Kagan's question. It said indirectly. And when you're talking about collecting a debt indirectly, well, I – what are other examples of collecting a debt indirectly that would be better examples than foreclosing on the – on the mortgage? So I think indirect debt collection would encompass things like publishing notice that's not directed to the debtor, but intended to shame the debtor into paying, or trying to garnish his wages informally by going to the employer. There are other things in that category, but at the end of the day, we're not here to argue about which reading of that first sentence is better. We think each side has a plausible reading of that first sentence. But at the end of the day, the second sentence tells you how Congress viewed these, and it chose to regulate security interest enforcers separately. And I think the second fundamental problem with using repo to save this from superfluity is that it doesn't actually do that. As Mr. Shanmugam was explaining and some of the questions pointed out, repossession or even this narrowed subset of repossession would constitute debt collection under Petitioner's own broad reading of that indirect clause. The whole point of repossession is to take property to satisfy a debt, and when you take someone's property to satisfy a debt. Sotomayor, I'm sorry, he doesn't, because he says the creditor doesn't care, the repro man doesn't care about the debt. He gets paid for taking the car. And if the creditor gets the car, the creditor exempted – is exempted from the act because he can – he's legally entitled for his debt not covered by the act to sell it. And so I'm not sure how you're right. The repro man is not looking for the guy to sell. And I think even Mr. Shanahan said that if the repro guy said, I will wait to 3 hours. If you pay your debt, I won't take your car, that he could, in fact, be a debt collector. So we agree on the last point. We agree that if you engage in security interest enforcement but then go further and make threats or demand payment, then that's debt collection. We agree with that much. But what I think is not correct is the idea that repossession is fundamentally different. If you're taking property to be used to satisfy a debt, it doesn't matter whether you sell it or indeed whether anyone sells it. If Jones lends Smith $100 and then Smith can't pay and then Jones says, well, I'll take your watch, that's debt collection whether Jones keeps the watch for 80 years or sells it the next day. The sale doesn't make a difference. And more importantly to the other aspect of debt collection that Petitioner highlights, the incentives that are created or the message that's sent, surely with repossession, that would fall within his general definition as well. The tow truck sends a powerful message that if you don't pay, you're not getting your car back. So I think the consumer or the debtor in Petitioner's view would equally get that message that we must repay if I want my property back. So on Petitioner's view, there's no purpose at all for this second definition. And I'd like to touch on a few of these. Breyer, let me just ask you one question on what you mean. Imagine we have a person just like this one, he's trying to enforce a securities interest and he doesn't ask for any deficiency payment. All right, you say that falls within the F-6 exclusion, or that's part two, that falls within, all right. But if he goes further, then he says something more and he gets into one. But you're also worried about the State law. And you don't want to create a situation where the State law says go through this procedure and they can't do it because of this act. What happens if the person is exactly like this one, doesn't ask for a deficiency payment, and then that does violate some sections of this outside of F-6, and there is no State law requiring it? So there is a State law for, I guess, here requiring you to go to newspapers. There is a State law requiring you to communicate. Well, what happens in the government's view? If it's just the same as here, but that last-mentioned State law requiring you to advertise in newspapers, for example, doesn't exist. So in that circumstance, if you're going beyond the procedures set forth in State law to enforce a security interest, then you're not within this part two definition. You are engaged in debt fraud. Well, that's the part that puzzled me, exactly what I thought you would say. And can you explain it a little? Because if you're outside of the main thing, part one, and only covered by F-6, because you did certain things, I want the house and I'm not saying anything about deficiency, just what happened here. If you're outside it for the instance where you get a conflict with State law, why wouldn't you be outside it for the instance where you don't get a conflict with State law? So it's not about what State law requires for its own sake. It's about identifying what's within the four corners of enforcement of a security interest, the text Congress used. And the best and at least the first place to look are the procedures State law outlines to do that. No. In other words, you're saying if the State were exactly the same, but it just didn't say anything about newspapers, then his client would win. So I think that does present a trickier question. Why? Where the State law doesn't. They're out, they're out, they're in, they're in. Their behavior is identical. Because if the State law prescribes the procedure that you're going through, it's relatively easy for courts to determine that what you are doing is enforcing a security interest. If you're doing something that State law doesn't require, then you have the more difficult question of under the general definition, the first part one definition, does this conduct constitute debt collection? So if you engage in repossession or any other enforcement of a security interest, but you also send a demand letter, that demand letter is that. Roberts. I see if I understand. I'm sorry. Go ahead. I just want to make sure I understand the answer. The statute uses the language primary purpose debt collection, primary purpose security interest. Sentences one and three. Are you saying that the test of a bank's primary purpose is whether it's taking an action necessary under State law to collect on a security interest or to enforce a security interest? So there are two separate things here. To be a debt collector, it has to be your primary purpose under the part two definition. But in that third sentence, it also uses that language primary purpose. Exactly right. Is your answer that we determine that by reference to State law and what is mandated in order to collect on a security interest or to enforce a security interest? We determine whether what you're doing is security interest enforcement by looking at State law. That's right, to determine whether your steps, the actions you've taken, are the things that are set forth in State law. I understand. Thank you. I'm sorry for interrupting. No. So if State law, if a State's nonjudicial foreclosure process also allows the creditor to get a deficiency judgment, what in your view follows from that? So I think you'd look to what the creditor does. If the creditor brings a judicial foreclosure action and seeks a deficiency judgment, if I may finish, then that conduct would be debt collection. If the debt or the creditor does not seek a deficiency judgment, that's not debt collection. It's purely the enforcement of a security interest. Thank you, counsel. Three minutes, Mr. Geiser. Thank you, Mr. Chief Justice. I'd like to start with 1692i because we heard very little about it from the other side. 1692i does not mention deficiency judgments. Its plain text is targeting an action to enforce an interest in real property securing the consumer's obligation. That's a foreclosure. And it says specifically that this applies to debt collectors under the main definition who bring a legal action on a debt against a consumer. It's a bit much to say this is regulating debt collectors, but not debt collection when Congress is using that type of language. That's such a key point for us because it shows that Congress understood that these two categories from these two sentences are not mutually exclusive. And the Court is right that it is very odd to say that Congress would have read language that clearly is an expansion as an exclusion. That's not how Congress drafts exclusions. And they don't draft it in this statute that way, which we know because they have a series of exclusions that does not include security enforcement. My friend suggested that repo activity is just a sliver. This is an entire industry, and it's absolutely clear that a repossession agent does not want to make any contact with the consumer. That's their goal, because if there's a breach of the peace, they can't take the car and they don't get paid. The government suggested that repo activity is exactly the same as liquidating the car. The problem with the government's argument is they're focusing on the wrong person. 1692a6 has a specific focus on the person and their individual activity. The repo agent's role is limited in the process. Chronologically, it comes before there is any debt collection on the repossessed item, because it's the secured creditor after the fact that's sending the notice, and it's the secured creditor after the fact that's selling the car, which makes it different. For the conflicts issue with State law, the conflicts here are not nearly – and first of all, there aren't actual conflicts. They're not nearly as jarring as this Court has adequately dealt with in Hines v. Jenkins when you have an entire State court procedure and State court rules. When you look to the real conflicts with the publication notice, they're easily accounted for by having the creditor send them or by getting advanced consent from the consumer to provide the necessary approval at the time of the foreclosure, which other courts have looked at. And the position that we're taking has been the rule in multiple jurisdictions now, some for decades, including in Colorado for a quarter century. There has been no demonstrated effect on any State law foreclosure scheme. Foreclosures are taking place regularly. There's no actual proven injury to the State's interest, which is probably why not a single State showed up today with an amicus brief suggesting that this was somehow offensive to their personal schemes. If there are no further questions. Sotomayor, I'm assuming that to the extent judicial foreclosures have been viewed as debt collection, that whatever conflicts have worked out there have also been – that have happened there have also been worked out. Oh, absolutely, which is why it's very easy to accommodate these interests. And again, Congress understood that in the foreclosure context, you could have someone enforcing a security interest and still qualify under the main definition, because it is additive language, not exclusive language. Thank you, counsel. The case is submitted.